# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-7525-GW(JCx) | Date | November 15, 2012 |
| Title | *CatchPlay, Inc., (Cayman) et al v. Studio Solutions Group, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Valerie Ho
Vincent Henry Chieffo

Attorneys Present for Defendants:

Alex M. Weingarten
Leslie A. Eggers

PROCEEDINGS:   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6) FOR FAILURE TO STATE A CLAIM (10/09/12)

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative and for reasons stated on the record, Defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND.** Plaintiff will have two weeks from the date of this order to **manually** file a First Amended Complaint.

: 15

Initials of Preparer   JG

*CatchPlay Inc. (Cayman), et al. v. Studio Solutions Group, Inc., et al.*, Case No. CV-12-07525
Tentative Ruling on Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. Proc.
12(b)(6) for Failure to State a Claim

Studio Solutions Group, Inc. ("SSG") and Johnny Lin (collectively "Defendants") move to dismiss the Complaint CatchPlay Inc. (Cayman) and CatchPlay Inc. (Taiwan) (collectively "Plaintiffs") filed in this action on August 31, 2012. On October 11, 2012, the Court granted Plaintiffs' request for a preliminary injunction, in a limited fashion. *See* Docket Nos. 53, 59.[1]

Under Rule 12(b)(6), concerning whether a complaint has properly stated a claim, a court is to (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 562-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570). "A

---

[1] Contrary to Plaintiffs' suggestion, the Court does not view its ruling on the preliminary injunction motion as being in any way binding in connection with its consideration of this motion to dismiss. The former is an evidence-based motion; the latter asks only whether Plaintiffs' Complaint sufficiently states a claim, a question that was not before the Court when it considered whether a preliminary injunction should issue.

1

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In its consideration of the motion, the court is limited to the allegations on the face of the complaint/counter-claim (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.), *cert. denied*, 512 U.S. 1219 (1994), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

With respect to at least certain issues, the proper course on this motion is relatively clear. First, the Complaint insufficiently states any claim against Lin. The alter ego allegations are conclusory, *see* Complaint ¶¶ 2, 15, (or, where factual, insufficient, as they only plead that Lin is the sole shareholder and Chief Executive Officer of SSG, *see id.* ¶ 15) and there are no allegations that he breached any duty running to *him*. *See, e.g., Leek v. Cooper*, 194 Cal.App.4th 399, 415 (2011) ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity."); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445 (6th Cir. 2012) ("Even in the absence of direct allegations that Outokumpu's U.S. entities were coconspirators at Cuproclima,…the court may look beyond those entities' corporate forms if the complaint presents *facts* to support a determination that the subsidiaries were alter egos of the parent corporation.") (emphasis added). If Plaintiffs are to make out any viable claim against Lin, they must amend to do so.

Second, the Court will not dismiss either the breach of contract or declaratory relief claims against SSG because, as noted in connection with the preliminary injunction-related proceedings (though, again, those proceedings are not controlling), Plaintiffs have alleged that (or seek a declaration clarifying whether) SSG breached its written agreements with Plaintiffs by

way of an improper termination of Plaintiffs' licenses.[2] *See* Complaint ¶¶ 19, 55-57, 71. The Court will not attempt to unpack, at this stage, whether there are any *additional* terms that are part of those written agreements and, if so, what terms, because Plaintiffs plainly have sufficiently pled at least the aforementioned breach claim.

That leaves Plaintiffs' second and fourth claims for relief. The second claim – for breach of fiduciary duty and constructive fraud – is dependent upon[3] Plaintiffs' allegation that SSG was acting as Plaintiffs' "special agent" in forming Acquisition Agreements with a number of studios/licensors, with the Plaintiffs serving as the undisclosed principals. *See* Complaint ¶ 60; *Knox v. Dean*, 205 Cal.App.4th 417, 432 (2012) (recognizing – unsurprisingly – existence of fiduciary duty as element of claim for breach of fiduciary duty); *Stokes v. Henson*, 217 Cal.App.3d 187, 197 (recognizing a fiduciary relationship as one of the elements for a claim of constructive fraud). The Court might agree with Plaintiffs that they have pled the existence of such a relationship in sufficient detail, but, without getting into Defendants' arguments regarding application of the statute of frauds and other reasons to potentially question the viability of the "special agent" theory, it tends to agree with Defendants that Plaintiffs have a significant *Twombly/Iqbal* "plausibility" problem with that theory.

In short, it is difficult to understand how Plaintiffs could plausibly plead such a principal-agent relationship with SSG when the 23 written agreements between the parties (which no party disputes the Court may consider on this motion, *see Marder*, 450 F.3d at 448 and Complaint ¶ 19) contain default/termination provisions which SSG (the supposed agent) may invoke against

---

[2] Although it is possible that the Court will determine at some stage in this case that there is no reason for a separate declaratory relief claim if it continues to duplicate an issue that will be resolved in a companion breach of contract claim, the Court will not exercise its discretion so as to foreclose the declaratory relief claim from proceeding at this stage.

[3] Absent the fiduciary relationship that would be imposed by an agent-principal relationship, the Court would agree with Defendants that Plaintiffs have insufficiently demonstrated a basis for reading a fiduciary relationship into the contractual relationship former by the parties' 23 written agreements. *See, e.g., Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141, 1161 (2005) ("The evidence, at most, is that Nokes undertook to tell Persson everything about the current state of the business, and Persson trusted him to do so. If that were sufficient to create a fiduciary obligation 'to act with the utmost good faith for the benefit of the other party,' virtually every purchase and sale transaction would give rise to fiduciary duties. That clearly is not the case.") (omitting internal citation); *Wolf v. Superior Court (Walt Disney Pictures & Tele.)*, 107 Cal.App.4th 25, 29-36 (2003); *see also* Complaint ¶ 23 ("At SSG's and Johnny's request, CatchPlay Cayman relied solely on its special agent SSG, and SSG and Johnny knew CatchPlay Cayman relied solely on SSG, to provide to CatchPlay Cayman accurate and specific information set forth in the Acquisition Agreements SSG entered into on behalf of CatchPlay Cayman…."). Amendment in this regard is conceivable, however (though perhaps difficult considering Plaintiffs' admitted commercial sophistication, *see* Complaint ¶¶ 1, 12). *See Persson*, 125 Cal.App.4th at 1161.

3

Plaintiffs (the supposed principals). To be clear, it is not the *language* of the default provisions that the Court finds inconsistent with an agency relationship, but the *very existence* of such provisions. Such rights would seem, to this Court, inherently inconsistent with any perceived principal-agent relationship. In addition, as Defendants also argue, if SSG was indeed Plaintiffs' agent, it is unclear how it would have any rights at all to license to Plaintiffs, because it would have already acquired any rights it had from the studios *for Plaintiffs*, making Plaintiffs the rights-holders from the get-go. The Court would ask Plaintiffs to focus their discussion at oral argument on how they can avoid the conclusion that the agency relationship they posit is simply unsustainable given the allegations and facts the Court can consider.[4]

Plaintiffs' fourth claim is for aiding and abetting breach of fiduciary duty, and is directed at Defendants' alleged assistance to Wayne Chang, Plaintiffs' former General Manager. Under California law (which the Court presumes applies here), aiding and abetting a tort requires that the alleged aider and/or abettor "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1144 (2005). The parties' arguments suggest to the Court that Plaintiffs' theory arises under the first prong of that common law test. At least where "ordinary business transactions" are at issue, knowledge that the underlying fiduciary is committing the breach becomes the "crucial element." *Id.* at 1145.

At this time, the Court would at least agree with Defendants that Plaintiffs have not alleged sufficient facts reflecting SSG's *knowledge* that Chang was engaging in activities that would breach his fiduciary duties as Plaintiffs' General Manager.[5] *See* Complaint ¶¶ 36, 40, 62, 71, 76. Plaintiffs direct the Court to paragraph 75 of their Complaint for their pleading of the

---

[4] Only if Plaintiffs can overcome this issue would the Court then have to address the statute of frauds issue and other arguments for why Plaintiffs' second claim cannot survive the pleadings.

[5] Defendants argue that Plaintiffs must comply with Fed. R. Civ. P. 9(b) because their fourth claim for relief sounds in fraud. Even assuming that the Court were to agree that Plaintiffs' allegations "sound in fraud" (an assumption that is by no means a safe one to make, notwithstanding the seemingly off-hand descriptions included in paragraph 3 of the Complaint), the Court will not resolve at this time whether a claim that sounds in fraud as it relates to a *non-party* – Chang – must be pled with the requisite particularity as it relates to a party. Rule 9(b) is designed to give the one charged with fraud – here, Chang, a non-party – the requisite detail to know how to frame a response. The Court may have to resolve this issue if the nature of Plaintiffs' allegations in this regard remain the same upon amendment, if any.

4

knowledge requirement for aiding and abetting liability. That paragraph provides as follows:

> SSG knew that [Chang] was conducting activity that constituted breaches of duty owed to Plaintiffs including, but not limited to, establishing, while still serving as General Manager of Plaintiffs, a Taiwan entity, E Zon, to compete with Plaintiffs in the business of exploitation of rights to Audiovisual Works in Taiwan and, further, SSG knew that [Chang] had not disclosed to Plaintiffs his breaches of fiduciary duty.

*Id.* ¶ 75. As Defendants point out, Plaintiffs have not – for instance – alleged that Defendants knew that Chang and Plaintiffs were both interested in licensing, and therefore competing for, the same films. *See id.* ¶¶ 62, 71, 76.[6]

In sum, based upon the parties' arguments thus far, the Court is inclined to deny the instant motion as it relates to the first and third claims for relief against SSG, to grant it with leave to amend as to the fourth claim for relief as to SSG, and to grant it without leave to amend as to the second claim for relief unless Plaintiffs can solve the "plausibility" problem and/or they indicate they can amend so as to add further allegations to support a fiduciary relationship stemming from an especially "vulnerable" contractual relationship. Lin would enjoy whatever ruling the Court ultimately issues with respect to the second claim for relief; as to all other claims pled against him, the Complaint would be dismissed with leave to amend.

---

[6] Plaintiffs *have*, in fact, made essentially this allegation with respect to the film *Magic Mike*, *see* Complaint ¶ 77, yet the parties' briefs on this motion do not appear to focus on this allegation insofar as the "knowledge of the underlying fiduciary breach" element is concerned. The Court would ask the parties to address this issue at oral argument in order to determine whether indeed Plaintiffs have satisfactorily made this allegation.

5