**GREENBERG TRAURIG, LLP**
Vincent H. Chieffo (SBN 49069) ChieffoV@gtlaw.com
Valerie W. Ho (SBN 200505) HoV@gtlaw.com
Nina D. Boyajian (SBN 246415) BoyajianN@gtlaw.com
Matthew R. Gershman (SBN 253031) GershmanM@gtlaw.com
1840 Century Park East, Suite 1900, Los Angeles, CA 90067-2121
Tel: 310-586-7700; Fax: 310-586-7800
Attorneys for Plaintiffs/Counterclaim defendants
CatchPlay Inc. (Cayman) and CatchPlay Inc. (Taiwan)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| CATCHPLAY INC. (CAYMAN) and CATCHPLAY INC. (TAIWAN), <br><br> Plaintiffs, <br><br> vs. <br><br> STUDIO SOLUTIONS GROUP, INC. and JOHNNY LIN, <br><br> Defendants. | CASE NO. CV 12-07525 GW (JCx) <br><br> **PLAINTIFFS' SUPPLEMENTAL NOTICE OF APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT** <br><br> [filed concurrently with Notice for Application and Hearing for Right to Attach Order and Order for Issuance of Writ of Attachment; Application for Right to Attach Order and Order for Issuance of Writ of Attachment After Hearing; Declarations of Daphne Yang, Valerie W. Ho, and Cedar Boschan; and [Proposed] Right to Attach Order and Order for Issuance of Writ of Attachment] <br><br> Date:  July 22, 2013 <br> Time:  8:30 AM <br> Courtroom:  10 <br> Judge:  Hon. George H. Wu <br> Complaint Filed:  August 31, 2012 <br> Trial:  December 10, 2013 |

## PUBLIC REDACTED COPY

PLAINTIFFS' SUPPLEMENTAL NOTICE OF APPLICATION

LA 130925644v4

## **SUPPLEMENTAL NOTICE OF APPLICATION**

Plaintiffs CatchPlay Inc. (Cayman) and CatchPlay Inc. (Taiwan) (collectively "Plaintiffs" or "CatchPlay") hereby supplement their separately filed Notice of Application and Hearing for Right to Attach Order and Order for Issuance of Writ of Attachment as follows:

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65-1 of the Local Rules of this Court, Plaintiffs hereby apply for a Right to Attach Order and Order for Issuance of Writ of Attachment as against defendant Johnny Lin, a defendant in this action, who is represented by counsel at the firm Weingarten Brown LLP, 10866 Wilshire Blvd., Suite 500, Los Angeles, California 90024.

The amount to be secured by the attachment is $5,372,716. The attachment claim against Lin's assets is based upon Lin's status as the alter ego of defendant Studio Solutions Group, Inc. ("SSG"). California law allows writs of attachment to issue against an entity or individual who is not a party to a contract if that entity or individual is the alter ego of the party whose property is subject to attachment. *See, e.g., Meizlisch v. San Francisco Wool Sorting & Scouring, Co*., 213 Cal. 668, 670-71, 3 P.2d 310 (1931); *Paul v. Palm Springs Homes Inc.*, 192 Cal. App. 2d 858, 862-63, 13 Cal. Rptr. 860 (1961). As applied here, the assets of Lin, as the alter ego of SSG, should be subject to attachment in addition to the assets of SSG. From the outset, it was admitted that Lin is SSG's sole shareholder, owner and chief executive officer. (Answer, Dkt. 121, at ¶ 15.) And, as shown in the accompanying declaration of Cedar Boschan, Plaintiffs have now obtained evidence of SSG's bank records demonstrating that ███████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████.

This Application is based upon the concurrently filed Notice for Application and Hearing for Right to Attach Order and Order for Issuance of Writ of Attachment, Application for Right to Attach Order and Order for Issuance of Writ of Attachment

After Hearing, the Declarations of Daphne Yang, Valerie W. Ho, and Cedar Boschan, the attached Memorandum of Points and Authorities, the pleadings and papers filed in this action, and on such other material or argument that the Court may properly consider in ruling on this Application.

This Motion is made following the conference of counsel, pursuant to Local Civil Rule 37-1, that commenced on June 10, 2013 and was completed on June 20, 2013. The basis of this motion was explained in writing in an e-mail sent to Defendants' counsel on June 10, 2013, wherein Plaintiffs' counsel requested a meet-and-confer on June 13, 2013—the same time that the parties' counsel already were scheduled to meet and confer regarding other pending discovery issues. Defendants' counsel, however, refused to discuss this matter on the June 13, 2013 meet-and-confer teleconference, or during the parties' other meet-and-confer on June 14, instead transparently delaying the meet-and-confer for as long as possible until June 20, 2013.

The Court had previously referred to the Magistrate Judge CatchPlay's Application for a Right to Attach Order against SSG. The Magistrate Judge heard oral argument on that Motion on June 18, 2013 and has taken the Motion under submission. While CatchPlay files the current Application for a Right to Attach Order against Lin with this Court, it assumes that this Application likewise will be referred to the Magistrate Judge. Accordingly, CatchPlay will be serving the Magistrate Judge's Chambers with a courtesy copy of this Application.

Dated:  June 24, 2013                    GREENBERG TRAURIG, LLP


By:   _____/s/ Valerie W. Ho_____
          Valerie W. Ho
          *Attorneys for Plaintiffs and Counterclaim*
          *Defendants CatchPlay Inc. (Cayman) and*
          *CatchPlay Inc. (Taiwan)*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  DESPITE SSG BEING FLUSH WITH FUNDS PRIOR TO THIS LAWSUIT
     (WITH WHAT REALLY WAS CATCHPLAY'S MONEY), NEW EVIDENCE
     REVEALS ██████████████████████████████████████████████████
     ████████ ...................................................................................................2

   A.  ████████████████████████████████████ .....................................2

   B.  ████████████████████████████████ Around the Time that
         SSG Unilaterally Terminated CatchPlay's Rights. ....................................4

   C.  New Evidence Reveals ██████████████████████
         ████████████████████ ...........................................................................4

   D.  New Evidence Reveals ████████████████████████████
         ███ ........................................................................................................5

III.  ATTACHMENT AGAINST LIN'S ASSETS IS APPROPRIATE HERE .................8

   A.  California Law Regarding The Availability Of Attachment Orders. .............8

   B.  CatchPlay Satisfies All The Statutory Requirements To Obtain A Writ
         of Attachment Over Lin's Assets. ...............................................................9

      1.  CatchPlay's Claim Is One Upon Which A Writ Of Attachment
             May Issue. .........................................................................................9

      2.  CatchPlay Is More Likely Than Not To Obtain A Judgment
             Against Lin As The Alter Ego Of SSG..............................................11

      3.  CatchPlay's Purpose In Seeking The Writ Is Recovery On Its
             Claim. ...............................................................................................15

      4.  CatchPlay's Claim Is For A "Readily Ascertainable" Amount
             Not Less Than Five Hundred Dollars. ..............................................15

      5.  Plaintiffs Are Prepared To Post An Undertaking. .............................16

IV.  CONCLUSION ...................................................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES

LA 130925644v4

# TABLE OF AUTHORITIES

CASES

*Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) ...................................... 9

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*
    *Local No. 70 of Alameda Co*., 415 U.S. 423 (1974) ................................................. 8

*Grotheer v. Meyer Rosenberg, Inc.*, 11 Cal. App. 3d 268, 53 P.2d 996 (1936) ............... 14

*Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080
    (C.D. Cal. 2009) .................................................................................. 10, 11

*Irving v. EBIX, Inc*., 10-CV-762 JLS (BLM), 2010 WL 3168423
    (S.D. Cal. Aug. 10, 2010) ............................................................................ 15

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ....................................................... 9

*Koninklijke Philips Elecs. N.V. v. Int'l Disc Mfrs*., No. CV 06-2468-CAS (SSx),
    2006 WL 4532985 (C.D. Cal. May 16, 2006) ............................................... 11

*Las Palmas Associates v. Las Palmas Ctr. Associates*, 235 Cal. App. 3d 1220,
    1 Cal. Rptr. 2d 301 (1991) .................................................................... 12, 14

*Loeb & Loeb v. Beverly Glen Music, Inc*., 166 Cal. App. 3d 1110,
    212 Cal. Rptr. 830 (1985) ............................................................................ 11

*Meizlisch v. San Francisco Wool Sorting & Scouring, Co*., 213 Cal. 668,
    3 P.2d 310 (1931) ................................................................................... 2, 10

*N. Hollywood Marble Co. v. Super. Ct.*, 157 Cal. App. 3d 683,
    204 Cal. Rptr. 55 (1984) .............................................................................. 15

*Paul v. Palm Springs Homes Inc.*, 192 Cal. App. 2d 858, 13 Cal. Rptr. 860 (1961) .... 2, 10

*Samuels v. Super. Ct.*, 276 Cal. App. 2d 264, 81 Cal. Rptr. 216 (1969) .......................... 10

*Tesoro Ref. & Mktg. Co. v. Cal. Finest Oil*, CASE NO. 12-cv-1312-GPC-WVG,
    2013 U.S. Dist. LEXIS 14947 (S.D. Cal. Feb. 4, 2013) .......................................... 8

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228,
    121 Cal. Rptr. 2d 1 (2002) ........................................................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES

STATUTES AND RULES

Cal. Civ. Proc. Code § 481.010 ........................................................................ 9

Cal. Civ. Proc. Code § 481.190 ...................................................................... 11

Cal. Civ. Proc. Code § 483.010 ...................................................................... 10

Cal. Civ. Proc. Code § 484.090 .............................................................. 9, 10, 11

Cal. Civ. Proc. Code § 487.010 ........................................................................ 9

Federal Rule of Civil Procedure 64 .................................................................. 8

OTHER

16A <u>Cal. Jur. 3d</u>, Creditors' Rights and Remedies § 86 (2013) .................................. 2, 10

MEMORANDUM OF POINTS AND AUTHORITIES

*LA 130925644v4*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

New evidence uncovered by Plaintiffs now establishes that Plaintiffs are likely to prevail on their alter ego claim against defendant Johnny Lin ("Lin"), who is the sole shareholder, owner, and chief executive officer of co-defendant Studio Solutions Group, Inc. ("SSG").  Accordingly, Plaintiffs now seek to attach Lin's assets along with the attachment over SSG's assets.[1]

On May 14 and 21, 2013, CatchPlay finally received copies of SSG bank records from Bank of America and JP Morgan, respectively.  On June 18, CatchPlay also received copies of checks written from SSG's Bank of America accounts.  The un-redacted bank records previously withheld by SSG reveal ███████████████████████ ████████████████████████████████.  Indeed, █████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████ █████. ██████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████████████. 

Worse, █████████████████████████████████████

---

[1]  On June 18, 2013, the Court held a hearing on Plaintiffs' previously filed Application for right to attach order and writ of attachment against the assets of defendant SSG, which was brought on the grounds that (1) SSG's conduct resulted in breaches of its agreements with CatchPlay, (2) CatchPlay has established the probable validity of that claim against SSG, (3) SSG's attachment request was not sought for a purpose other than the recovery on the claim, (4) the attachment amount sought was greater than zero, and (5) the attachment amount sought was readily ascertainable in an amount not less than $500.  (*See* Application, Dkt. No. 158.)  The original amount sought in the attachment application regarding SSG's assets was $5,423,716; however, after new facts arose, that request was subsequently reduced by Plaintiffs to $5,372,716.  (Dkt. No. 216.)   Inasmuch as Lin is the alter ego of SSG, $5,372,716 is the amount of the attachment now sought against Lin's assets.

1

MEMORANDUM OF POINTS AND AUTHORITIES

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ██████████████████████████████████████████

4 ██████████████████████████████████████████

5 ███████████████████████████████████. During

6 the fourth quarter of 2012 to February 2013 (by which time ████████████

7 █████████████████████████), when SSG was telling the Court that it had no

8 money to pay licensors for exploitation rights it had previously obtained for CatchPlay,

9 Lin ████████████████████████████████████████

10 ███████████████████████████████████

11 ██████████████████████████████████████████████

12 ██████████████████████████████████████████████

13 ██████.

14    In short, SSG's own bank records establish that Plaintiffs are likely to prevail on

15 their alter ego claim against Lin.  As such, attachment over Lin's assets is appropriate, in

16 addition to the already-requested attachment over SSG's assets.[2]

17 **II.   DESPITE SSG BEING FLUSH WITH FUNDS PRIOR TO THIS LAWSUIT**

18 **(WITH WHAT REALLY WAS CATCHPLAY'S MONEY), NEW**

19 **EVIDENCE REVEALS** ████████████████████████████

20 ██████████████████████████████

21 **A.** ███████████████████████████**:**

22    In his September 20, 2012 declaration opposing CatchPlay's motion for

---

[2]  California law allows writs of attachment to issue against an individual who is not a
party to a contract if that entity or individual is the alter ego of the party whose property
is subject to attachment.  *See, e.g., Meizlisch v. San Francisco Wool Sorting &*
*Scouring, Co*., 213 Cal. 668, 670-71, 3 P.2d 310 (1931); *Paul v. Palm Springs Homes*
*Inc.*, 192 Cal. App. 2d 858, 862-63, 13 Cal. Rptr. 860 (1961); 16A Cal. Jur. 3d,
Creditors' Rights and Remedies § 86 (2013) "California law allows writs of attachment
to issue against an entity or individual who is not a party to a contract if that entity or
individual is the alter ego of the party whose property is subject to attachment.").

LA 130925644v4

1  preliminary injunction, Lin represented to the Court, under oath, that "CatchPlay did not

2  bankroll our operations and did not front the money needed to acquire titles." (Ho Decl.,

3  Exh. 16 [Lin Decl., Dkt. 12-1 at ¶ 11].)  The SSG bank records ████████████████████.

4       The first agreement between the parties was entered in March 2008.  (Ho Decl.,

5  Exh. 17 [Defendants' Exhibits, Dkt. 18 at Exh. 1].) ██████████████████████████

6  ████████████████████████.  (Boschan Decl., ¶ 30.) ████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ██████████████.  (Boschan Decl., ¶ 29, Exh. 2 at Schedule AA; Ho Decl., ¶ 16.)

9  ████████████████████████████████████████████████████████████████████[3]

10 (*Id.*) ███████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████

13 ████████████████████  As the Court recognized in its March 28 Order, one of the issues in

14 this case is whether Lin "appl[ied] corporate funds and assets to his personal use,

15 including funds originally provided to SSG by plaintiffs that were to have been held by

16 SSG to pay future obligations with respect to audiovisual works to which plaintiffs hold

17 the Taiwan exploitation rights or to have been returned to plaintiffs if such audiovisual

18 works were not produced . . . ." (Ho Decl., Court Order, Ex. 1 [Dkt. 155 at 2].)  The un-

19 redacted SSG bank records demonstrate ████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████████[4].

---

[3]  During this time period, ██████████████████████████████████████████████.

(Boschan Decl., ¶ 22, Exh. 2 at Schedule T; Ho Decl., ¶¶ 17-18, Exhs. 12-13.) ███████

████████████████████████████████.

[4]  SSG did not un-redact the bank records it provided to CatchPlay in the so-called

"licensor binders" even though this Court's March 28 Order stated that it "finds the

second category of cases, *i.e.*, those cases which disapprove of redacting portions of

documents which otherwise contain discoverable information based upon relevance to

**B.** ███████████████████████████ **Around the Time that SSG Unilaterally Terminated CatchPlay's Rights.**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.

(Boschan Decl., ¶ 22, Exh. 2 at Schedule T.)  By the time SSG was manufacturing its claims of contract breach against CatchPlay in July and August 2012, it had ████████ ████████████████████████, presumably for the titles that Chang was attempting to steal from CatchPlay. ████████████████████████ ████████████████████████████████████████.

**C.**   **New Evidence Reveals** ████████████████████████ ██████████████**:**

████████████████████████████████████████

█████████████████████████████████. (Boschan Decl., ¶ 31.)  Lin ███

██████████████████████████. ████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████.

(Boschan Decl., ¶ 24, Exh. 2 at Schedule V.)

Shortly thereafter, ██████████████████████████

████████████████████████████████████

████████████████████████. (Boschan Decl., ¶ 25, Exh. 2 at Schedule

be more persuasive."  (Ho Decl., Court Order, Exh. 1 [Dkt. 155 at 5 n.4].)  CatchPlay was forced to move to compel on this and other issues, which motion CatchPlay won on June 18, 2013.

MEMORANDUM OF POINTS AND AUTHORITIES

LA 130925644v4



1  W.)

2  Worse, ███████████████████, when SSG was representing to the Court in

3  its *Ex Parte* Application to Compel Payment that it had no money and was "unable to pay

4  the licensors until it receives the funds owed by CatchPlay," Lin ███████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████. (Ho Decl., Exh. 18 [Dkt. 104 at 1:18-19].)  During the

7  last quarter of 2012 through February 2013, ████████████████████████

8  █████████████████████████████████. (Boshan Decl., ¶ 32, Exh.

9  3.) ████████████████████████████████████████████

10 ██████████████████████████████████████

11 ████████████████████████████████████████████

12 ██████████.

**D.  New Evidence Reveals ██████████████████████████████.**

14  When the Court ordered that CatchPlay was permitted to obtain SSG's bank

15 account records, the Court correctly recognized the SSG bank records were relevant to

16 the alter ego issue in this case:

17  The requested SSG … account records are also relevant to the Alter Ego

18  Allegations in that they are reasonably calculated to lead to the discovery of

19  admissible evidence which establishes whether Lim [sic] has improperly

20  siphoned excessive funds from SSG (including funds supplied to SSG by

21  plaintiffs), whether SSG funds (including those supplied to SSG by

22  plaintiffs) have improperly been used to pay Lim's [sic] personal expenses,

23  and whether SSG's and Lim's [sic] funds have been commingled

24  improperly.

25 (Dkt. 155 at 6.)  Now, the bank records that CatchPlay obtained confirm that ██████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████

28 ██████████████████████████████████████. As the sole person

5

MEMORANDUM OF POINTS AND AUTHORITIES

LA 130925644v4

1   controlling SSG,[5] Lin █████████████████████████████.

2      For example, ██████████████████████████████

3 ████████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 █████████████████████████. (*See* Boschan Decl., ¶ 6,

6 Exh. 2 at Schedule D; Ho Decl., ¶¶ 9-11, Exhs. 6-8.)████████

7 ███████████████, title is actually held in the name of another Lin controlled entity,

8 Slappy Happy LLC.  (Ho Decl., ¶ 10, Exh. 7.)  According to the California Secretary of

9 State's database, Slappy Happy, LLC's business address is Lin's residence—9311

10 Cherokee Lane, Beverly Hills, CA 90210.  (Ho Decl., ¶ 11, Ex. 8.)  Slappy Happy,

11 LLC's agent for service of process is Matthew Wallerstein, the same Wallerstein who

12 had sent to CatchPlay, on behalf of SSG, the August 20, 2012 letter in which SSG

13 threatened to terminate all of CatchPlays' rights unless CatchPlay paid SSG $5.246

14 million (no backup or accounting was provided).[6]  (Ho Decl.,¶¶ 11, 20, Exhs. 8, 15.)

15      Lin ██████████████████████████████████

16 ████████████████████████. (Boschan Decl., ¶ 4, Exh. 2 at

17 Schedule B.)  Altogether, it appears ████████████████████████

18 █████████████████. (*Id.*)

19      Lin ████████████████████████████████

20 ██████████████████████████████████:

21      • ████████████████████████████████

22

_____

23 [5] Lin admits he is SSG's sole shareholder, owner and chief executive officer. (Ho. Decl., Exh. 14 [Answer, Dkt. 121, at ¶ 15].)

24 [6] ███████████████████████████████████████████

25 ████████████████████████████████████████████

26 ████████████ (Boshan Decl., ¶ 21, Exh. 2 at Schedule S page 42 of 61; Ho Decl., ¶¶ 12-14, Exhs. 9-11.)  Lin ███████████████████████████████████

27 ████████████████████████. (Boshan Decl., ¶ 21, Exh. 2 at Schedule S.)  Thus, it appears

28 ███████████████████████.

1    ███████████ ;

2 • ████████████████████ ;

3 • █████████████████████ ;

4 • ████████████████ ;

5 • ████████████████████████ ;

6 • ████████████████████████ ;

7 • █████████████ ;

8 • ███████████████ ;

9 • ████████████████████████████ ;

10    ████ ;

11 • ████████████████████████████

12    ████████████████████████████

13    ███ ;

14 • ██████████████ ;

15 • ███████████████████ ;

16 • ███████████████████████████████

17    █████████████████ .

18 (Boschan Decl., ¶¶ 5, 7-20, Exh. 2 at Schedules C-R.)   In comparison to ██████████

19 ████████████████████████████████

20 ███████ . (*Id*. at ¶ 26, Exh. 2 at Schedule X.)

21 ████████████████████████████ .  There were ████████████

22 █████████████████████████████████

23 ██████████████████████ .  (Boschan Decl., ¶ 27, Exh. 2 at Schedule Y;

24 *see also* ¶ 28, Exh. 2 at Schedule Z.)  No records were produced by JP Morgan for the

25 1828 account.  (Ho Decl., ¶ 15.)  CatchPlay assumes no records were produced for the

26 1828 "checking" account because it is Lin's personal bank account for which JP Morgan

27 was advised that records need not be produced pursuant to the Court's Order.  Some of

28 the JP Morgan statements indicate ████████████████████████

1    █████████████████████████████. (Boshan

2 Decl., ¶ 27.) ███████████████████████████████

3 ████████████████████████████. (Boshan Decl., ¶¶ 27-28, Exh. 2 at

4 Schedules Y-Z.)

5        Lin ████████████████████████████████████

6 ████████████████████████████████

7 ██████████████████████. (Boschan Decl., ¶ 3, Exh. 2 at Schedule A.)

8 ██████████████████████████████████

9 ██████████████████████████████████

10 ██████████████████████████████████████

11 ████████████. Lin ████████████████████████████

12 ██████████████████████████. ████████████████

13 ██████████████████████████████████.

14 (*Id.*)

15        In short, there is ample evidence of "transactions between SSG and Lin" which

16 support CatchPlay's alter ego allegations.  (*See* Dkt. 155 at 2 & 7.)

17    **III.    ATTACHMENT AGAINST LIN'S ASSETS IS APPROPRIATE HERE**

18  **A.    California Law Regarding The Availability Of Attachment Orders.**

19        Federal Rule of Civil Procedure 64(a) allows a party to invoke any remedy for

20 seizing property allowed under the law of the state in which the district court sits.  The

21 effect of Rule 64 is "to incorporate state law to determine the availability of prejudgment

22 remedies for the seizure of property to secure satisfaction of a judgment ultimately

23 entered.  Attachment is a prejudgment remedy that allows a creditor to have a lien on the

24 debtor's assets until final adjudication of the claim sued upon."  *Tesoro Ref. & Mktg. Co.*

25 *v. Cal. Finest Oil*, CASE NO. 12-cv-1312-GPC-WVG, 2013 U.S. Dist. LEXIS 14947, at

26 *4-5 (S.D. Cal. Feb. 4, 2013) (*citing Granny Goose Foods, Inc. v. Brotherhood of*

27 *Teamsters & Auto Truck Drivers Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n.10

28 (1974)).

8

LA 130925644v4

In California, writs of attachment are governed by California Civil Procedure Code sections 481.010 through 493.060.  Section 484.090(a) sets forth four elements that Plaintiffs must show in order for the court to issue such a writ:  (1) the claim upon which the attachment is based must be one upon which an attachment may be issued; (2) Plaintiffs must establish the probable validity of the claim upon which the attachment is based; (3) the attachment must not be sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment must be greater than zero."  Cal. Code Civ. Proc. § 484.090(a).

Where a defendant is a natural person, such as Lin in this case, all of the following property is subject to attachment:  interests in real estate (except leasehold estates with an unexpired term of less than one year), personal property, equipment, motor vehicles, chattel paper, negotiable and other instruments, securities, deposit accounts, safe deposit boxes, accounts receivable, general intangibles, property subject to pending actions, final money judgments, and personalty in estates of decedents.  *See* Cal. Civ. Proc. Code §487.010(c).

**B.**  **CatchPlay Satisfies All The Statutory Requirements To Obtain A Writ of Attachment Over Lin's Assets.**

As set forth below, because CatchPlay can establish all the requirements in California Civil Procedure Code section 481.010 *et seq.*, a writ of attachment should issue.[7]

**1.**  **CatchPlay's Claim Is One Upon Which A Writ Of Attachment May Issue.**

The first requirement under section 484.090(a) is that the "claim upon which the

---

[7]  Evidentiary standards for deciding a pre-trial provisional remedy are relaxed.  *See Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) ("A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction.").

MEMORANDUM OF POINTS AND AUTHORITIES

attachment is based [must be] one upon which an attachment may be issued."  Cal. Code Civ. Proc. § 484.090(a).  Here, CatchPlay has asserted a breach of contract claim (*see* FAC, Dkt. No. 76), and attachment based on breach of contract claim is specifically contemplated by Civil Procedure Code section 483.010(a) ("an attachment may be issued … in an action on a claim … for money … based upon a contract").[8]

Here, the underlying and already-pending request for attachment against SSG's assets is based on a contract claim, and the current request for attachment against Lin's assets is derivative of the underlying request, inasmuch as Lin is the alter ego of SSG. California law allows writs of attachment to issue against an individual who is not a party to a contract if that individual is the alter ego of the party whose property is subject to attachment.  *See, e.g., Meizlisch v. San Francisco Wool Sorting & Scouring, Co*., 213 Cal. 668, 670-71, 3 P.2d 310 (1931); *Paul v. Palm Springs Homes Inc.*, 192 Cal. App. 2d 858, 862-63, 13 Cal. Rptr. 860 (1961); 16A <u>Cal. Jur. 3d</u>, Creditors' Rights and Remedies § 86 (2013) "California law allows writs of attachment to issue against an entity or individual who is not a party to a contract if that entity or individual is the alter ego of the party whose property is subject to attachment.");* see also Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080, 1082 (C.D. Cal. 2009) ("California law allows writs of attachment to issue against an entity or individual who is not a party to a contract if that entity or individual is the alter ego of the party whose property is subject to attachment." (citing *Meizlisch*, 213 Cal. at 670-71; *Paul*, 192 Cal. App. 2d at 862-

---

[8]  Attachment may issue upon a proper "contract" claim "whether or not other forms of relief are demanded."  Cal. Code Civ. Proc. § 483.010(d).  Thus, attachment may issue on a contract claim even though the complaint contains other alternative noncontract claims.  *See Samuels v. Super. Ct.*, 276 Cal. App. 2d 264, 267, 81 Cal. Rptr. 216 (1969).  Likewise, attachment may issue on a contract claim where, as here, equitable relief was sought (and granted) in addition to monetary recovery.  *See Paul v. Palm Springs Homes, Inc.*, 192 Cal. App. 2d 858, 863 (1961) (suit to recover money due under promissory note and to set aside corporate entity).

1   63)).[9]

2   **2.   CatchPlay Is More Likely Than Not To Obtain A Judgment Against**

3        **Lin As The Alter Ego Of SSG.**

4        The second requirement under section 484.090(a) is that CatchPlay must

5   "establish[] the probable validity of the claim upon which the attachment is based."  Cal.

6   Code Civ. Proc. § 484.090(a)(2).  "A claim has 'probable validity' where it is more likely

7   than not that the plaintiff will obtain a judgment against the defendant on that claim."

8   Cal. Code Civ. Proc. § 481.190.  A court makes this determination by "consider[ing] the

9   relative merits of the positions of the respective parties and make[s] a determination of

10  the probable outcome of the litigation."  *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166

11  Cal. App. 3d 1110, 1120, 212 Cal. Rptr. 830 (1985).[10]

12       Here, CatchPlay is more likely than not to succeed on its contract claim against

13  SSG, and thus should be granted the underlying right to attach order against SSG's

14  assets, for all the reasons fully explained in the already-pending attachment motion heard

15  by the Magistrate Judge on June 18, 2013.  Those reasons already are fully briefed and

16  _____

17  [9]  While the district court in *Hamilton Beach* denied the attachment request against the
    alleged alter ego, it did so without prejudice and based on facts easily distinguishable

18  from the facts in this case.  Specifically, the plaintiff in *Hamilton Beach* sought
    attachment against the alleged alter ego of the signatory to a contract, but, unlike

19  CatchPlay here, failed to provide any evidence of, among other things, inadequate

20  capitalization and commingling of funds.  614 F. Supp. 2d at 1083.  In contrast,
    CatchPlay here has provided substantial evidence, taken directly from SSG's bank

21  records, that shows ███████████████████████████████████████████

22  ███████████████████████████ .

23  [10]  The "probable validity" component of the statute can be satisfied "by declarations and
    documentary evidence" demonstrating, for example, the "(1) the existence and terms of

24  the royalty agreement, (2) the breach of the agreement, (3) the results of the audit, and

25  (4) [defendant's] failure to pay the royalties due."  *Koninklijke Philips Elecs. N.V. v.
    Int'l Disc Mfrs.*, No. CV 06-2468-CAS (SSx), 2006 WL 4532985, at *5 (C.D. Cal. May

26  16, 2006).  The court in *Koninklijke* found that defendant had failed to rebut plaintiff's

27  demonstration that, at a minimum, it was "in breach of the License Agreements by its
    failure to submit reports and failure to timely make royalty payments," and therefore it

28  was "'more likely than not'" that plaintiff would obtain a judgment against defendant.

                                          11

LA 130925644v4

submitted, and they need not be repeated here.  As for the derivative attachment request against Lin, the evidence produced thus far also establishes the probable validity of CatchPlay's alter ego claim against Lin.

We begin with the law of alter ego.  There are generally two requirements to impose alter ego liability on stockholders of a corporation:

"Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders.... 'It has been stated that the two requirements for application of this doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'"

*Las Palmas Associates v. Las Palmas Ctr. Associates*, 235 Cal. App. 3d 1220, 1249, 1 Cal. Rptr. 2d 301 (1991).  "The courts consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers."  *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245, 121 Cal. Rptr. 2d 1 (2002).  "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine."  *Id.*  As applied here, the circumstances and facts revealed by the new evidence in SSG's bank records establish that Lin is likely the alter ego of SSG.

Initially, there is no dispute regarding a unity of interest and ownership, as Lin is SSG's sole shareholder, owner and chief executive officer.  (Ho. Decl., Ex. 14 [Answer, Dkt. 121, at ¶ 15].)  And, as the person in total control over SSG, the un-redacted SSG bank records establish ██████████████████████████████████████████ ██████████████████████████ k.  Again, by way of example, ████████████████████████

12

MEMORANDUM OF POINTS AND AUTHORITIES



1 ██████████████████████████████████████████████████████████[11].

2 (*See* Boschan Decl., ¶ 6, Exh. 2 at Schedule D; Ho Decl., ¶¶ 9-11, Exhs. 6-8.)

3 Additionally, ████████████████████████████████████████████.

4 (Boschan Decl., ¶ 4, Exh. 2 at Schedule B.)  And, as detailed above and in the

5 accompanying Declaration of Cedar Boschan, ████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 █████████████████████████.  (Boschan Decl., ¶¶ 4, 7-17, Exh. 2 at Schedules B,

15 E-O.)  Even more, █████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████.  (Boschan Decl., ¶¶ 5, 7-20, Exh. 2 at Schedules C-R.)

18 ██████████████████████████████████████████████████████

19 ███████████████████████████████, which again, suggest that he did not

20 distinguish between company funds and personal funds.  (Boschan Decl., ¶ 3, Exh. 2 at

21 Schedule A.) ██████████████████████████████████████████

22 ████████████████████████████████████████████████████

23

24 [11]  Title to Lin's house is held in the name of Lin's LLC, Slappy Happy LLC, which was

25 formed just prior to the purchase of Lin's home.  But Lin's creative shifting (and

26 attempted shielding) of assets cannot avoid the attachment remedy.  With this

application, Plaintiffs seek to attach Lin's membership interest in his Slappy Happy

27 LLC entity.  Plaintiffs also seek to attach Lin's ownership interest in his production

company Filmula, as well as any other attachable securities and interests in LLCs or

28 other partnerships.

MEMORANDUM OF POINTS AND AUTHORITIES

LA 130925644v4

1  ██████████████████████████████████. (*Id.*)  *In total,* ██

2  ████████████████████████. (*Id.*)  At this time, █████████

3  ████████████████, and Plaintiffs need discovery to find out.  One thing is for

4  sure, based on this evidence, ██████████████████████████████

5  ████ e.

6      What's more, ██████████████████████. ████████████████

7  ██████████████████████████████████████ (Boshan Decl., at

8  ¶ 26, Exh. 2 at Schedule X), ████████████████. ██████████████

9  ████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ████  ████.[12]  (Boschan Decl., ¶ 31.)  In other words, ████████████

12 ████████████████████████.

13      In light of the foregoing, Plaintiffs are likely to prevail in showing that it would be

14 inequitable to recognize SSG and Lin separately.  Thus, Lin's assets should be attachable

15 as the alter ego of SSG.  *See Las Palmas Associates*, 235 Cal. App. 3d at 1249 ("[I]t

16 would be unjust to permit those who control companies to treat them as a single or

17 unitary enterprise and then assert their corporate separateness in order to commit frauds

18 and other misdeeds with impunity."); *see also Grotheer v. Meyer Rosenberg, Inc.*, 11

19 Cal. App. 3d 268, 271-72, 53 P.2d 996 (1936) (reversing lower court's dissolving of writ

20 of attachment against corporation upon satisfactory showing that it was an alter ego of its

21 individual stockholder, who owed the plaintiff money and yet had transferred his

22

23 [12] ██████████████████████████████████████

24 █████████.  For instance, in September 2012, *while CatchPlay's motion for preliminary injunction was pending,* ██████████████████████████████████

25 ████████████████████████████████████████████████████

26 ██ l.  ██████████████████████████.  (Boschan Decl., ¶ 24, Exh. 2 at Schedule V.)

27 And, on September 21, 2012, ██████████████████████████████████

28 ██████████████████████.  (Boschan Decl., ¶ 25, Exh. 2 at Schedule W.)

14

MEMORANDUM OF POINTS AND AUTHORITIES

property to the corporation, holding that "where the obligation for which the alter ego corporation is sought to be held liable is based on contract, express or implied, for the direct payment of money, process of attachment is available against the property of said corporation").

### 3. CatchPlay's Purpose In Seeking The Writ Is Recovery On Its Claim.

As with CatchPlay's purpose in seeking a writ of attachment against SSG's assets, CatchPlay's purpose here also is to create a judicial lien pending a determination on the merits of this case, and for no other purpose.  (Yang Decl., ¶ 2.)[13]  Indeed, attachment is particularly appropriate here, given ███████████████████████████████████████ ███████████████████████████.  (*See supra* Section II.)  *See, e.g., N. Hollywood Marble Co. v. Super. Ct.*, 157 Cal. App. 3d 683, 690, 204 Cal. Rptr. 55 (1984) (explaining that "where the remedy of attachment is most needed" is to "protect the plaintiff from dissipation of the assets of a financially distressed defendant.").

### 4. CatchPlay's Claim Is For A "Readily Ascertainable" Amount Not Less Than Five Hundred Dollars.

CatchPlay's underlying request for a writ of attachment against SSG is based upon an express and implied contract claim that is readily ascertainable in an amount greater than $500, thus satisfying the requirement for issuance of a writ of attachment under Section 483.010 of the California Code of Civil Procedure.[14]  That issue already is fully explained, briefed, and is under submission with the Court.  Because the current request

---

[13]  This is a sufficient showing to satisfy the standard for attachment under California law.  *See Irving v. EBIX, Inc.*, 10-CV-762 JLS (BLM), 2010 WL 3168423, at *4-5 (S.D. Cal. Aug. 10, 2010) (rejecting defendant's argument that the plaintiff sought a writ of attachment for an improper purpose, and further holding that the fact that a writ of attachment might inconvenience the defendant "does not mean that Plaintiff's motive is improper").

[14]  The original amount sought in the attachment application regarding SSG's assets was $5,423,716 (Dkt. No. 158); however, after new facts arose, that request was subsequently reduced by Plaintiffs to $5,372,716.  (Dkt. No. 216.)   Inasmuch as Lin is the alter ego of SSG, $5,372,716 is the amount of the attachment sought against Lin's assets.

15

MEMORANDUM OF POINTS AND AUTHORITIES

for attachment against Lin is derivative of the underlying request, this requirement is satisfied here for the same reasons.

### 5.   <u>Plaintiffs Are Prepared To Post An Undertaking.</u>

Pursuant to California Code of Civil Procedure sections 489.210 at 489.220, Plaintiffs are prepared to file an undertaking of $10,000, or whatever reasonable amount the Court deems appropriate.  (Yang Decl., ¶ 3.)

### IV.   CONCLUSION

███████████████████████████████████████████████████

██████████.  To prevent defendant Lin from doing the same for himself, and for all the reasons set forth above, the Court should grant CatchPlay's attachment request regarding Lin's assets.

Dated:  June 24, 2013                    GREENBERG TRAURIG, LLP


                                         By:   _/s/ Valerie W. Ho_____
                                               Valerie W. Ho
                                               *Attorneys for Plaintiffs and Counterclaim*
                                               *defendants CatchPlay Inc. (Cayman) and*
                                               *CatchPlay Inc. (Taiwan)*

MEMORANDUM OF POINTS AND AUTHORITIES

LA 130925644v4